UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| JOSEPH P. ANISKO, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:10-cv-244 |
| ) | |
| v. ) | Honorable Paul L. Maloney |
| ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Defendant. ) | |
| _____) | |

This is a social security action brought under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claim for disability insurance benefits (DIB). Plaintiff filed his application for benefits on October 13, 2006, alleging an onset of disability as of that date. His claim for DIB benefits was denied on initial review. On February 3, 2009, he received a hearing before an administrative law judge (ALJ), at which he was represented by counsel. (A.R. 21-52). On March 11, 2009, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 12-20). On January 13, 2010, the Appeals Council denied review (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

On March 10, 2010, plaintiff filed his complaint seeking judicial review of the Commissioner's decision denying his claim for DIB benefits. The three issues raised by plaintiff are as follows:

   1.   The ALJ committed reversible error by not properly considering the opinions of plaintiff's two treating physicians and by following the opinion of a nonexamining physician instead;

    2.       The ALJ did not have substantial evidence to support her finding that plaintiff could have performed sedentary work; and

    3.       The ALJ committed reversible error by failing to follow the accurate hypothetical question which was posed to the vocational expert.

(Statement of Errors, Plf. Brief at 10, docket # 8). Upon review, I find that the ALJ's opinion does not satisfy the procedural requirement of providing "good reasons" for the weight the ALJ gave to the opinions of plaintiff's treating physicians. I recommend that the ALJ's decision be vacated and the matter remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

### Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the

Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Discussion

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from October 13, 2006, through the date of the ALJ's decision. Plaintiff had not engaged in substantial gainful activity on or after October 13, 2006. (A.R. 14). The ALJ found that plaintiff had the following severe impairments: "benign positional vertigo, diabetes, and sleep apnea." (A.R. 14). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 15). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of sedentary work:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform less than the full range of sedentary level work as defined in 20 CFR 404.1567(a). The claimant requires a sit/stand option every one to two hours based on residuals of diabetes and vertigo; causing infrequent episodes of dizziness and an imbalance in his gait, with minimal head turning. Moreover, postural limitations involve the avoidance of tasks of climbing ladders, ropes and scaffolds; as well as balancing tasks. The claimant is able to perform occasionally tasks involving climbing of ramps and stairs, stooping, kneeling, crouching and crawling. Environmental limitations involve the avoidance of heights and dangerous moving machinery.

(A.R. 15).

The ALJ found that plaintiff's testimony regarding his subjective limitations was not fully credible:

> Medical records dated May 17, 2006, submitted from West Michigan Heart Center indicate that the claimant has a history of coronary artery disease status post anterior wall myocardial infarction in 1994, and he was treated with thrombolytic. He underwent subsequent angioplasty of the left anterior descending coronary artery (single vessel disease). The claimant also has a history of insulin-dependent diabetes mellitus Type 2, and hyperlipemia, treated with the medication Lipitor. The claimant had a slightly decreased ventricular function. Prior laboratory work dated December 9, 2005 included a comprehensive metabolic panel, CK, and lipid panel. The total cholesterol was 121, HDL was 46, triglycerides were 48, and LDL was 65. The glucose was elevated at 347. The hemoglobin A1 was 8.4 (Exhibit 1F at 6)[A.R. 195].

> Physical examination showed that the claimant was alert and oriented times three. He was in no acute distress. His height was 5' 9" and his weight was 183 pounds. The blood pressure was 98/60. The pulse was 55 and regular. The neck was supple, without evidence of jugular venous distention or carotid bruits. The respirations were even and unlabored. The lung sounds were clear bilaterally, interiorly and posteriorly. The cardiac evaluation revealed a normal S1 and S2, without evidence of a murmur or gallop. The extremities revealed no evidence of clubbing or cyanosis. There was no lower extremity edema noted. The posterior tibial pulses were +2 bilaterally. The brachial pulses were [+] 2 bilaterally. The patient ambulated with a normal gait (ID)[A.R. 195].

> The examining physician noted that the patient appeared to be doing well from a cardiovascular standpoint. He denies any chest discomfort or anginal-type symptoms. The claimant was encouraged to develop a routine exercise program and no changes were made to his current medication regimen (Exhibit 1F at [5])[A.R. 195].

Medical records dated April 6, 2006 indicate that about one year ago in 2005, the claimant had an episode of the room spinning, which lasted seconds to one minute, and was accompanied by nausea. Exacerbation of the vertigo [occurred with] quick turns and rising from the bed. By September 2005, the symptoms felt as though the claimant was spinning and not the room. In October, 2005 the claimant was diagnosed to have benign paroxysmal positional vertigo. He was treated with Meclizine and instructed in the Epiey maneuver to be performed at home. However, the symptoms increased at a rate of 6 to 10 episodes a day. Objective indications revealed peripheral vestibular system involvement without localization to the right or the left. The claimant was recommended for vestibular and balance therapy at the Balance Center (Exhibit 3F at 7 and 5F and 9F)[A.R. 219, 247, 329-31].

Subsequent medical records dated August 1, 2006 indicate that the claimant presented with complaints of a painful right knee that was also grinding. X-ray showed that the bones, joints and soft tissues were normal. The claimant was also diagnosed to have benign positional vertigo and diabetes mellitus in November 2006 (Exhibit 2F at 4, and 6 and Exhibit 4F at 6)[A.R. 202, 204, 206, 237].

A Diabetes Mellitus Residual Functional Capacity Questionnaire was completed on March 8, 2007 indicating that the claimant has balance problems daily, especially if he was up and active. He was recently discharged from the Kent Community Hospital Balance Center after being advised that nothing further could be done for him (Exhibit 8F)[A.R. 279-82].

Medical records dated January 21, 2008 indicate that the claimant was diagnosed to have obstructive sleep apnea and received a CPAP machine to help him sleep. He was doing well and sleeping from 10:00 p.m. or 11:00 p.m. to 7:00 a.m. The claimant was noted to have a history of diabetes mellitus, type complicated by hypoglycemic, unawareness and peripheral neuropathy; hyperlipidemia, and coronary artery disease with a history of myocardial infarct. The claimant had been checking his blood sugars before dinning and was doing better. His A1C was slightly better than before, from 8.7 percent in November 2007 to 7.6 percent in January 2008 (Exhibit 10F at 2 and Exhibit 12F at 1)[A.R. 293, 313].

Medical treatment records from Michigan Medical Endocrinology Metabolism Center dated June 13, 2008 indicate[] that the claimant presented for follow up due to his multiple impairments of coronary artery disease, history of myocardial infarction, hyperlipidemia, peripheral neuropathy of the lower extremities, hypoglycemic unawareness and a long-standing inner ear problem. He stated that his peripheral neuropathy was now more painful, and he was currently taking Lantus 30 units at bedtime, but he stated that often times, once to twice weekly, he would forget this medication, which compromised his blood sugars then for the next 24-hours. He was taking Humalog 1.0 unit for [every 10] grams of carbohydrates with each meal, and an additional unit for every 40 that the blood sugar was over 120. He was on Metforinin ER 500mg, two tablets bid, [Altace] 2.5 mg. Lovastatin, 80 mg., Aspirin once daily, Claritin 10 mg., and Cymbalta 60mg. (Exhibit 13F at 1)[A.R. 322].

> The claimant reported that when he took his insulin correctly, his fasting blood sugar was usually 120 to 140. At noon it was around 80, pre-evening meal was 70 to 140, and bedtime was around 120. The claimant would occasionally forget his Lantus at bedtime, once to twice weekly, because he fell asleep early (Exhibit 13F at 1)[A.R. 322].
>
> At the hearing the medical expert testified that based on medical records from Spectrum Health for the period of April 2006 to November 2006 (Exhibit 5F)[A.R. 246-69] and from Spectrum Health Balance Center for the period of April 2006 through October 2006 (Exhibit 3F at 8) [A.R. 220], the claimant has a vertigo condition that people can tolerate and that the claimant was able to walk. The medical expert also testified that the record contained little information regarding the claimant's impairment of sleep apnea and some of the information from Spectrum Health was duplicative. The medical expert continued to testify that in his opinion, the record supports the claimant's ability to perform sedentary level work with a two hour break, but that he needs to move around, and he is restricted in turning his head. [A.R. 39-48].
>
> Based on the aforementioned medical evidence, testimony at hearing, and the complete record, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessed herein.
>
> In terms of the claimant's alleged impairment conditions the record shows that although the claimant has multiple impairment conditions, they do not preclude the performance of a restricted range of sedentary level work. The record failed to establish any chronic condition or significant abnormalities that would preclude the performance of substantial gainful work activity. Moreover, the claimant testified at hearing that he returned to work after the onset date of disability and performed sedentary level work, sitting at a desk and dismantling computers. The job stopped because the program ended, not because the claimant could not perform the work. [A.R. 27, 36]. He also worked at Toy-R-Us from May 2008 through October 2008 unloading trucks and stocking shelves. [A.R. 27-28, 36-37]. Although he had problems with vertigo and neuropathy in the lower extremities, his ability to perform this exertionally heavier than sedentary job for six months detracts from his complaints of a totally disabling condition.

(A.R. 15-18). Plaintiff was unable to perform his past relevant work. (A.R. 18). Plaintiff was 45 years old as of the date of his alleged onset of disability and 47 years old as of the date of the ALJ's decision. Thus, at all times relevant to his claim for DIB benefits, plaintiff was classified as a younger individual. (A.R. 18). Plaintiff has at least a high-school education and is able to

communicate in English. (A.R. 18). The transferability of job skills was not material to a disability determination. (A.R. 19). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with his RFC, education, and work experience, the VE testified that there were approximately 17,000 jobs in the State of Michigan that the hypothetical person would be capable of performing. (A.R. 50-51). The ALJ found that this constituted a significant number of jobs. Using Rule 201.21 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled. (A.R. 19-20).

### 1.

Plaintiff argues that the ALJ committed reversible error by not giving adequate weight to the residual functional capacity questionnaires completed by his treating physicians, John T. Duhn, D.O., and Edward Kryshak, M.D.  The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner.  20 C.F.R. § 404.1527(e)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).  A treating physician's opinion that a patient is disabled is not entitled to any special significance. *See* 20 C.F.R. § 404.1527(e)(1); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician.").  Likewise, "no special significance" is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(2); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Generally, the medical opinions of treating physicians are given substantial, if not controlling, deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton*, 246 F.3d at 773. An opinion that is based on the claimant's reporting of his symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*,

SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. § 404.1527(d); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 652 F.3d 653, 659-61 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "The procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Rabbers v. Commissioner*, 582 F.3d 647, 657 (6th Cir. 2009). The ALJ's opinion fails to provide "good reasons" for the weight she gave to the opinions of Drs. Duhn and Kryshack.

Dr. Kryshack completed "Diabetes Mellitus Residual Functional Capacity Questionnaires" on March 8, 2007 (A.R. 279-82), and January 27, 2009 (A.R. 342-44). Dr. Kryshack is not mentioned anywhere in the ALJ's opinion. Although the ALJ's opinion includes a sentence acknowledging the existence of the 2007 diabetes questionnaire (A.R. 16), the ALJ never addressed the substance of Dr. Kryshack's 2007 responses. The ALJ ignored Kryshack's 2009 responses. Dr. Duhn is never mentioned in the ALJ's opinion, and the ALJ erroneously attributed Duhn's May 22, 2007 Vertigo Residual Functional Capacity Questionnaire responses (A.R. 284-91) to another doctor. (A.R. 18). Standing alone, the ALJ's error in attribution would not warrant reversal of the Commissioner's decision, but when it is combined with the ALJ's failure to examine the treatment relationship, specialization, and other factors listed in 20 C.F.R. § 404.1527(d)(2), and the ALJ's disregard for the opinions expressed by Drs. Kryshack and Duhn, the ALJ's opinion


cannot withstand scrutiny under Sixth Circuit standards[1] enforcing the procedural requirement of providing "good reasons" for the weight given to the opinions of plaintiff's treating physicians.

**2.**

The other issues raised by plaintiff do not provide a basis for disturbing the Commissioner's decision. The ALJ's finding that plaintiff retained the RFC for a limited range of sedentary work is supported by the substantial evidence: the medical expert testimony of Paul Miller, M.D. (A.R. 39-48). RFC is the most, not the least, a claimant can do despite his impairments. 20 C.F.R. § 404.1545; *Collins v. Commissioner*, 357 F. App'x 663, 668 (6th Cir. 2009).

The ALJ's finding that plaintiff's testimony was not fully credible is supported by substantial evidence. (A.R. 15-18). It is well settled that a hypothetical question to a VE need not include unsubstantiated complaints. *See Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Parks v. Social Security Admin.*, 413 F. App'x 856, 865 (6th Cir. 2011) ("Hypothetical questions [] need only incorporate those limitations which the ALJ has accepted as credible."); *Carrelli v. Commissioner*, 390 F. App'x 429, 438 (6th Cir. 2010) ("[I]t is 'well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.'") (quoting *Casey*, 987 F.2d at 1235). The VE does not determine a claimant's medical restrictions or how they impact on the claimant's residual functional capacity -- that is the ALJ's job. *See Maziarz v. Secretary of*

---

[1] The ALJ was from Illinois (A.R. 23) and may have been unfamiliar with Sixth Circuit cases recognizing a procedural right to "good reasons" under 20 U.S.C. § 404.1527(d)(2) independent of the claimant's substantive right to receive DIB benefits. *See Smith v. Commissioner*, 482 F.3d at 875-76.

*Health & Human Servs.*, 837 F.2d 240, 247 (6th Cir. 1987). The ALJ, having found that plaintiff's subjective complaints were not fully credible, was not bound in any way by a VE's response to a hypothetical question from the plaintiff's attorney incorporating a contrary assumption.

### Recommended Disposition

For the reasons set forth herein, I recommend that the Commissioner's decision be vacated and that the matter be remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

Dated:   November 9, 2011         /s/  Joseph G. Scoville
                                  United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).